UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN R. GORDON,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTHEW CATE, et al.,<br><br>    Defendants. | Case No. 11-cv-03593-JST (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; SCHEDULING MOTION FOR SUMMARY JUDGMENT; DIRECTIONS TO CLERK**<br><br>Re: Dkt. No. 29 |

Plaintiff, an inmate at the California Correctional Training Facility ("CTF"), filed this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that he was overcharged with a rules violation following a cell search that yielded two contraband screwdrivers. Plaintiff alleges defendants committed constitutional violations during the cell search, throughout the disciplinary process, and after the proceedings were completed. The Court screened plaintiff's First Amended Complaint ("FAC"), the operative pleading herein, and found that, liberally construed, plaintiff stated claims for cruel and unusual punishment, retaliation, due process violations, deprivation of property, and supervisory liability.

Now before the Court is defendants' motion to dismiss. Plaintiff has filed an opposition, and defendants have filed a reply.

**FACTUAL BACKGROUND**

The following is taken from the FAC.

**A.  October 8, 2010 Cell Search & Resulting Administrative Segregation Placement**

While housed at CTF's North Facility, plaintiff routinely repaired other inmates'

appliances. (FAC ¶¶ 26, 28.) "Officially [plaintiff] was not allowed to have other prisoner[s'] property in his cell and was only able to do so with the express understanding and permission of the housing unit staff." (Id.)

Defendants Lopp and Baumgardner had previously warned plaintiff not to have more than two appliances belonging to another inmate in plaintiff's cell at any given time. (Id. ¶ 29.) On October 8, 2010, in retaliation for plaintiff's not abiding by this warning, Lopp and Baumgardner entered plaintiff's cell and began "searching, removing, confiscating and purposely destroying large portions of [p]laintiff's personal property." (Id.) They also "discovered and read through the work-product of (35) previous filed administrative appeals belonging to the [p]laintiff as well as legal documentation relating to a prior civil action." (Id. ¶ 32.)

During the search, Lopp and Baumgardner found two "small screwdrivers." (Id. ¶ 30.) Based on the discovery of the screwdrivers, defendants Lopp, Baumgardner, and Ramos prepared a misconduct report "overcharging" plaintiff with possession of a "deadly weapon." (Id. ¶ 33.) Plaintiff should have only been charged with "the actual offense of contraband." (Id. ¶ 34.) Defendant Caravello, who had segregation authority, further falsified the misconduct report by describing the screwdrivers as inmate-manufactured weapons. (Id. ¶ 36.)

Defendants ordered that plaintiff be placed in Administrative Segregation ("Ad-Seg") knowing that this would cause plaintiff to lose his job assignment, his "A1-A" work status, and his inmate pay number. (Id. ¶¶ 35, 37.) Plaintiff "was deprived the right to offer his version of the events or opportunity to present his views" before being placed in Ad-Seg. (Id. ¶ 38.)

The next day, on October 9, 2010, defendant Martinez interviewed plaintiff. (Id. ¶ 39.) Martinez acknowledged the charges were "bogus" but determined that plaintiff should stay in Ad-Seg pending the outcome of disciplinary proceedings. (Id.)

### B. Conditions in Ad-Seg

During his time in Ad-Seg, plaintiff was subjected to a number of inhumane living conditions. For example, plaintiff was placed in a windowless cell without a jacket or other weather apparel and was "issued one (1) thin, flimsy cotton blanket." (Id. ¶¶ 46, 47.) Plaintiff's cell "lacked functional ventilation systems." (Id. ¶ 48.) He was denied a pillow and his mattress

was "dirty, foul-smelling, with stains from water, urine, mildew and or food." (Id. ¶¶ 51, 52.) He was exposed to "freezing, nighttime temperature[s]" and constant excessive noise from other inmates. (Id. ¶¶ 53, 55.)

### C. Release from Ad-Seg, Confiscation of Property, & Grievances

On November 18, 2010, at plaintiff's disciplinary hearing, plaintiff was found not guilty of possession of a deadly weapon. (Id. ¶ 57.) He was, however, found guilty of the "lesser infraction of contraband." (Id. ¶ 58.) Plaintiff returned to the general population on November 24, 2010. (Id. ¶ 62.)

On November 22, 2010, upon review of an inventory of his personal property, prior to his release from Ad-Seg, plaintiff discovered some of his property was missing. (Id. ¶ 59.) He did not receive a "confiscation receipt" for the missing property. (Id. ¶¶ 60-61.) After plaintiff filed an inmate grievance regarding the missing property, defendants Lopp and Mensing conspired to fabricate a fake confiscation receipt. (Id. ¶¶ 75-76.) Defendants Mensing and Clavijo then conspired to deny plaintiff's inmate grievance regarding the missing property. (Id. ¶¶ 77-79.)

Plaintiff also attempted to file inmate grievances "relating to the conditions he suffered while housed in Ad-Seg." (Id. ¶ 82.) Defendants Mullen, Truett, and Grounds refused to process these grievances. (Id. ¶¶ 84-87.)

### D. Work and Privilege Group Classifications

After plaintiff was released from Ad-Seg, his "A1-A" work and privilege group classifications were restored, but his job assignment and inmate pay number were not reinstated. (Id. ¶¶ 62-63.) As a result, plaintiff did not receive all the benefits he had received under his pre-segregation "A1-A" classification. (Id. ¶¶ 65-72.)

### E. Parties and Claims

During the relevant time period alleged in the complaint, defendants Martinez, Caravello, Mensing, Clavijo, Ramos, Truett, Mullen, Baumgardner, and Lopp were prison officials at CTF. (FAC at 5-6.) Defendant Cate is the former Secretary of CDCR. (Id.) Defendant Grounds is the former Warden of CTF. (Id.)

In its order of service, the Court found plaintiff had stated claims that: (1) Lopp,

3

Baumgardner, and Ramos subjected plaintiff to a retaliatory cell search; (2) Lopp, Baumgardner, Ramos, Martinez, and Caravello overcharged plaintiff for a disciplinary offense in violation of due process; (3) Cate, Grounds, and Martinez denied plaintiff the right to be heard prior to placement in Ad-Seg in violation of due process; (4) Cate and Grounds violated plaintiff's Eighth Amendment rights by placing him in inhumane housing; (5) Lopp, Baumgardner, and Ramos violated plaintiff's property interests by confiscating and destroying plaintiff's property; (6) Grounds violated plaintiff's due process rights by placing him in a hybrid "A1-A" work group; and (7) Grounds, Truett, and Mullen retaliated against plaintiff by failing to process his grievances. The Court also found plaintiff had stated claims for supervisory liability against defendants Cate and Grounds based on plaintiff's allegations that Cate and Grounds had allowed the constitutional violations alleged in Claims 2 and 5 to occur and based on plaintiff's allegations that Cate and Grounds provided inadequate oversight, which allowed Lopp, Mensing, and Clavijo to falsify the confiscation receipt.

## DISCUSSION

### I. Failure to Exhaust Administrative Remedies

Defendants argue that plaintiff failed to exhaust administrative remedies on his: (1) Eighth Amendment conditions of confinement claim relating to his time in Ad-Seg; (2) due process claim alleging he was denied the opportunity to be heard prior to being placed in Ad-Seg; and (3) retaliation claim based on defendants' alleged failure to process his grievances.

#### A. Standard of Review

Nonexhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense that should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted). In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. If the court concludes that the prisoner has not exhausted California's prison administrative process, the proper remedy is dismissal without prejudice. Id. at 1120.

/ / /

4

**B.     Analysis**

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a prerequisite to all prisoner suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 532 (2002). PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 94 (2006).

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition, or omission by the [CDCR] or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 C.C.R. § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, submitted on a CDC 602 inmate appeal form; (2) first formal level appeal, to an institution appeals coordinator; (3) second formal level appeal, to the institution warden; and (4) third formal level appeal, to the Director of the CDCR. See 15 C.C.R. § 3084.7; Brodheim v. Cry, 584 F.3d 1262, 1264-65 (9th Cir. 2009). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010).

The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). A prisoner need not exhaust further levels of review once he has either received all the remedies that are available at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Id. at 935. Affirmative acts by jail or prison officials that disrupt or prevent the exhaustion of administrative remedies may make those remedies effectively unavailable. Albino v. Baca, 697 F.3d 1023, 1033 (9th Cir. 2012).

/ / /

### 1. Eighth Amendment Conditions of Confinement Claim

As noted above, plaintiff was released from Ad-Seg on November 24, 2010. (FAC ¶ 62.) On March 2, 2011, plaintiff submitted a 602 Inmate Appeal form regarding "housing conditions in administrative segregation." (Pl. Decl. Ex. A.) Therein, plaintiff requested: (1) "all the windows within 'X-wing' be repaired"; (2) "all moldy and unsanitary mattresses be replaced"; (3) "all disrupt[ive] inmates housed in 'O-wing' be moved"; and (4) "that [plaintiff] be compensated." (Id.)

On March 4, 2011, the appeal was screened out at the first level on the ground it was not a proper appeal matter. (Truett Decl. Ex. D.) Title 15 of the California Code of Regulations provides that an appeal may be rejected where it "concerns an anticipated action or decision." 15 C.C.R. § 3084.6(b)(1).[1] Because plaintiff had already been released from Ad-Seg, the grievance was construed as relating to a speculative future condition.

The screening decision further instructed plaintiff that he had used the incorrect appeal form and that he should "utilize a form GA-22, Inmate Request for Interview." (Truett Decl. Ex. D.)[2] Finally, the screening decision advised plaintiff that he could challenge the cancellation decision and that his original appeal could be resubmitted if such challenge was granted. (Id.) Specifically, plaintiff was advised as follows:

> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

(Id.)

On March 8, 2011, plaintiff submitted another 602 Inmate Appeal form challenging the March 4, 2011 cancellation decision. (Pl. Decl. Ex. E.) In the section of the form directing plaintiff to "state briefly the subject of your appeal," plaintiff specifically wrote "Cancellation

---

[1] Due to a clerical error, the March 4, 2011 screening decision cites section 3084.3(c)(3), which was the applicable code section under the January 1, 2011 version of Title 15 of the California Code of Regulations. (Truett Decl. ¶ 16 n.1.) The current regulations went into effect on January 28, 2011. (Id.)

[2] The "Request for Interview" provides "[a] written method for an inmate or parolee to address issues and concerns with staff and/or to request items and services." 15 C.C.R. § 3086(d)(1).

6

1 Decision." (Id.) He alleged that his original March 2, 2011 602 Inmate Appeal addressed the

2 "conditions [of confinement he] suffered" making an inmate 602 form the correct "vehicle in this

3 matter." (Id.)

4 On March 10, 2011, the appeal was screened out at the first level. (Truett Decl. Ex. E.)

5 The screening decision found that plaintiff was attempting to re-submit his previously cancelled

6 appeal. (Id.)

7 On April 4, 2011, plaintiff made a third attempt to pursue his grievance regarding the

8 conditions of his Ad-Seg confinement. Specifically, he filed a third 602 Inmate Appeal form

9 complaining that Warden Grounds had "a custom of willful inaction in the operation of the

10 prison's Ad-Seg units." (Pl. Decl. Ex. G.) Plaintiff then went on to describe the Ad-Seg

11 conditions he encountered. (Id.) On April 6, 2011, the appeal was screened out at the first level

12 on the ground that it "involve[d] multiple issues that do not derive from a single event." (Truett

13 Decl. Ex. F.) The screening decision again advised plaintiff that he had not used the correct form

14 and that a request for information should be submitted on a GA-22. (Id.) Plaintiff did not submit

15 a GA-22. (Voth Decl. Ex. A at 65.)

16 The PLRA requires that an inmate exhaust such administrative remedies "as are available."

17 42 U.S.C. § 1997e(a). As the Ninth Circuit has repeatedly reiterated, the PLRA does not require

18 exhaustion when circumstances render administrative remedies "effectively unavailable." Sapp v.

19 Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010). If employees of a facility prevent the filing of a

20 grievance, the exhaustion requirement may be "unavailable" and defendants estopped from raising

21 non-exhaustion as an affirmative defense. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th

22 Cir. 2002). Courts have repeatedly held that an administrative remedy becomes "unavailable" for

23 purposes of the exhaustion requirement if prison officials do not respond to a properly filed

24 grievance or if they otherwise use affirmative misconduct to thwart a prisoner's attempts to

25 exhaust. See e.g., Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010); Brown v. Valoff, 422

26 F.3d 926 n.18 (9th Cir. 2005); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (finding

27 allegations that prison officials failed to respond to his written requests for grievance forms were

28 sufficient to raise an inference that the prisoner had exhausted his "available" administrative

7

1 remedies).

2 In his opposition, plaintiff argues that his March 2, 2011 grievance was improperly
3 screened out because he was challenging "ongoing conditions within segregation units" as
4 opposed to an "anticipated action." (Opp. at 6.) Plaintiff also argues that his March 8, 2011
5 grievance was improperly screened out because plaintiff was not re-submitting "the issues raised
6 in the March 2nd appeal" but rather was challenging the March 4, 2011 cancellation decision as
7 instructed. (Opp. at 7.)

8 The Court finds that plaintiff was prevented from filing a grievance exhausting his Eighth
9 Amendment claim.

10 As noted above, plaintiff's March 8, 2011 appeal clearly stated that he was challenging the
11 March 4, 2011 "Cancellation Decision." (Pl. Decl. Ex. E.) Plaintiff argued that he was
12 challenging "conditions [he] suffered" and "ongoing conditions" – not any anticipated action. (Id.)
13 To the extent there was any ambiguity, he requested an opportunity to "type or rewrite" the
14 original 602. (Id.)

15 In sum, plaintiff followed the procedure described in the March 4, 2011 screen-out form
16 regarding challenging the cancellation decision. Plaintiff's March 8, 2011 appeal had sufficient
17 language to put prison officials on notice that he was challenging such cancellation decision.
18 Defendants' argument that he was re-submitting a previously cancelled appeal is without merit,
19 and their failure to process the March 8, 2011 appeal as a challenge to the March 4, 2011
20 cancellation rendered administrative remedies "unavailable."

21 According to defendants, plaintiff could have submitted a GA-22 Request for Interview as
22 instructed. As plaintiff points out, however, a GA-22 is not an appeal form, and Requests for
23 Interviews are processed differently. See generally 15 CCR § 3086. "An inmate or parolee's
24 documented use of a Request for Interview [] form does not constitute exhaustion of
25 administrative remedies." 15 CCR § 3086(i). Defendants do not show how a GA-22 is
26 investigated through the appeals process or otherwise satisfies the exhaustion requirement. As
27 noted, nonexhaustion is an affirmative defense, i.e., "defendants have the burden of raising and
28 proving the absence of exhaustion." See Wyatt, 315 F.3d at 1119 (holding "PLRA does not

impose pleading requirement" as to exhaustion).

Accordingly, defendants' motion to dismiss plaintiff's Eighth Amendment claim regarding conditions of confinement he allegedly experienced in Ad-Seg will be denied.[3]

### 2. Due Process Claim Regarding Ad-Seg Placement

Defendants argue that plaintiff never filed a grievance regarding his claim that he was denied the right to be heard prior to his placement in Ad-Seg. Plaintiff argues in opposition that he raised this issue in a December 1, 2010 appeal, wherein he complained that defendants "had 'collaborated in falsifying the factual basis of an official' disciplinary document." (Opp. at 12.) Plaintiff has submitted a copy of said appeal, which is identified as Appeal No. CTF-S-10-2908. (Pl. Decl. Ex. K.) In the section of the 602 Inmate Appeal form, instructing plaintiff to "describe problem," plaintiff wrote the following:

> This appeal is filed in response to the depr[i]vation of due process, unlawful seizure of personal property, and the malicious and sadistic intent to increase animosity among inmates. Although this grievance has a causation link to the cdc-115 filed on 10-8-10, I was subsequently found innocent of the weapon charges in that case and thus only challenge the unprofessional actions and misdeeds of C/O Baumgardner, C/O Lopp and Sgt. Ramos. This Appeal does not challenge the findings of the CDC-115.
>
> Specifically, it is my assertion that said officers collaborated in falsifying the factual basis of an official document -- claiming that the tools found in my cell consisted of one (1) inmate manufactured slashing instrument which was sharpened on one edge and one (1) inmate manufactured stabbing instrument which was sharpened to a point. . . . The subsequent hearing proved the above to be a bold face lie on the part of the above named officers.
>
> The above named officers were plainly aware that the instruments found in the cell were being utilized solely as tools: i.e., screwdrivers and that as such the only infraction committed was that of being in the possession of dangerous contraband pursuant to the plain definition of the offense stated in section 3000 of the Title 15. Said officers had plain knowledge of the fact that such an offense was a Division "F" and the least serious of divisions (Sec. 3323 (H)(7)), and thus, would not require segregation. So they actively

---

[3] Defendants also assert an untimeliness defense to plaintiff's grievances even though the grievances were never rejected or cancelled for untimeliness. Plaintiff was given no notice of, or opportunity to administratively appeal, untimeliness. See Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011) (a late filing that is accepted and decided on the merits fulfills the exhaustion requirement of the PLRA). Accordingly, the Court finds defendants are estopped from asserting untimeliness.

> suppressed evidence in order to inflate the charges and have me placed in segregation.
>
> The above named officers know that "intent" was a necessary element of the division "A1A" offense of being in possession of a deadly weapon. As such, the officers conspired to suppress all evidence of "alternative intent" by failing to comply with section 3191(c) of the Title 15 as it relates to the large amount of electronic items removed from the cell . . . .
>
> Said officers continued this duplicit conduct throughout this disciplinary process as was evidence[d] by their refusal to answer honestly the questions posed to them by my I.E. . . . Said officers knew that my sole defense to these trumped up charges was that the alleged weapons were in fact simply tools used in my electronic work. However, with infringement on the integrity of the disciplinary proceedings, they sought to influence a different outcome.
>
> Finally, because these officers fail to provide me with a receipt of all the property removed from my cell a[s] required by regulations, I am unable to return the property that belongs to other inmates and resulting in me not being able to be housed on "B" yard on the basis of increased animosity. As well as increased risk of attacks.
>
> Accordingly, the above named officers['] actions and misdeeds ha[ve] caused severe harm. This harm must be righted and I plan to perpetrate this action to the fullest extent allowed by law and until justice is done.

(Pl. Decl. Ex. K.)

While plaintiff is not required to articulate his legal theories in his administrative appeal, see Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002), he is required to provide sufficient information so as to put prison officials on notice as to the facts at issue in his claim. See Porter v. Nussle, 534 U.S. 516, 531 (2002) (emphasizing importance of providing prison officials with notice and opportunity to take action before prisoner files suit). Appeal No. CTF-S-10-2908 contains no information which would have put prison officials on notice that plaintiff was claiming that defendants denied plaintiff an opportunity to be heard prior to placing him in Ad-Seg. The instant claim challenges occurrences different than those raised in plaintiff's administrative appeal.

Accordingly, the Court finds Appeal No. CTF-S-10-2908 did not exhaust plaintiff's administrative remedies, and defendants' motion to dismiss plaintiff's claim regarding the alleged denial to be heard prior to his placement in Ad-Seg will be granted.

### 3. Retaliation Claim Regarding Processing of Appeals

Defendants argue that plaintiff never filed a grievance regarding his claim that Grounds, Truett, and Mullen retaliated against him by failing to process his administrative grievances regarding living conditions in Ad-Seg. In his opposition, plaintiff argues that he raised this claim in his March 8, 2011 appeal wherein "he expressly complained that the screen-out of his March 2nd grievance was 'nothing more than a subtle attempt at subjugating [his] right to redress of a grievance with the State.'" (Opp. at 10.)

This argument fails for two reasons. First, the March 8, 2011 appeal alleged that defendants improperly cancelled plaintiff's March 2, 2011 appeal. The instant action contends that defendants retaliated against plaintiff by cancelling the March 2, March 8, and April 4, 2011 appeals. Therefore, the March 8, 2011 appeal would not have exhausted the claim raised in this action. Second, the Court finds that plaintiff's March 8, 2011 appeal was confined to a challenge of the earlier March 4, 2011 cancellation decision and did not provide sufficient information to put prison officials on notice that he was asserting a freestanding retaliation claim. See Sapp, 623 F.3d at 824 (an inmate must properly exhaust a freestanding retaliation claim against an appeals coordinator based in improper screening decisions).

Plaintiff argues alternatively that he was "effectively chilled" by defendants when he was "threaten[ed] with unspecified punitive actions if he persisted in filing any further grievances regarding issues related to segregation, i.e., the hand-written 'cancelled/warned' notation on the face of the March 8th grievance and the ominously worded screen-out sheet." (Opp. at 11.) While the Ninth Circuit has never addressed whether threats of retaliation may render administrative remedies unavailable, see Sapp, 623 F.3d at 823, other courts have held that the threat must be "sufficiently serious" and must objectively rise to the level "that would deter a reasonable inmate of ordinary firmness and fortitude" from pursuing the grievance process. See Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 684-85 (7th Cir. 2006). Here, the simple recitation of the regulations applied to screen out plaintiff's March 8, 2011 grievance cannot be said to constitute a "sufficiently serious" threat. Indeed, by plaintiff's own admission, he was not in fact "chilled" from pursuing further grievances.

1  Specifically, by plaintiff's own admission, he proceeded to file another 602 Inmate Appeal on
2  April 4, 2011 regarding conditions in Ad-Seg. Indeed plaintiff's CDCR grievance activity report
3  shows that he filed at least two other grievances that were accepted for review after the March 10,
4  2011 cancellation. (See Truett Decl. Ex. A.) And plaintiff's complaint specifically mentions "(35)
5  previous filed administrative appeals" filed prior to the October 8, 2010 cell search. (FAC ¶ 32.)
6  This all suggests that plaintiff was very familiar with the grievance process and the regulations
7  governing it.

Accordingly, defendants' motion to dismiss plaintiff's claim that Grounds, Truett, and Mullen retaliated against him by failing to process his administrative grievances will be granted.

## II.     Failure to State Claim

Defendants move to dismiss plaintiff's remaining claims on the ground that plaintiff's complaint fails to state sufficient facts.

### A.     Legal Standard

Dismissal is proper where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-56 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

The court must accept as true all material allegations in the complaint, but it need not accept as true "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). Review is limited to the contents of the complaint, including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Federal courts are particularly liberal in construing allegations made in pro se civil rights

12

complaints. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

**B.     Analysis**

**1.     Retaliatory Cell Search**

Defendants seek to dismiss plaintiff's claim for retaliation arising from the October 8, 2010 cell search on the ground that plaintiff has failed to allege that he was retaliated against for exercising a constitutional right.

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Here, plaintiff asserts there was an adverse action taken against him, in that defendants Lopp and Baumgardner searched his cell on October 8, 2010 and proceeded to remove and destroy property. (FAC ¶ 29.) Plaintiff does not, however, allege that the search was in response to plaintiff's "protected conduct." Rather, he expressly alleges that Lopp and Baumgardner searched his cell "for not abiding by their mandate" against possessing more than two appliances belonging to other inmates. (Id.) The complaint thus admits that the search was prompted by plaintiff's own rules violation and alleges no facts showing defendants acted in response to any constitutionally protected conduct.

Accordingly, plaintiff's claim for retaliation arising from the October 8, 2010 cell search will be dismissed. It appears that amendment to the claim would be futile as plaintiff has not provided in his opposition any additional details showing he was engaging in protected conduct. The dismissal will therefore be with prejudice.

**2.     Violation of Property Rights**

Defendants seek to dismiss plaintiff's claim for deprivation of property on the ground that California law provides an adequate remedy.

The Court agrees. Neither the negligent nor intentional deprivation of property states a claim under § 1983 if the deprivation was, as was alleged here, random and unauthorized. See

Parratt v. Taylor, 451 U.S. 527, 535-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986). The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient process. See Zinermon v. Burch, 494 U.S. 113, 128 (1990). California law provides an adequate post-deprivation remedy for any property deprivations. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Accordingly, plaintiff's claim for deprivation of property will be dismissed. Because the property claim cannot be cured by amendment, the dismissal is with prejudice.

### 3. Overcharged Disciplinary Offense

Defendants seek to dismiss plaintiff's claim that Lopp, Baumgardner, Ramos, Martinez, and Caravello overcharged plaintiff for a disciplinary offense in violation of due process on the ground that there is no due process right to be free from false disciplinary charges.

The Court agrees. "A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Chavira v. Rankin, 2012 WL 5914913, *1 (N.D. Cal. 2012) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir.1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Id. (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir.1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir.1983)).

Accordingly, plaintiff's due process claim arising from the alleged overcharging will be dismissed. Because the claim cannot be cured by amendment, the dismissal is with prejudice.[4]

### 4. Work and Privilege Group Classification Status

Defendants seek to dismiss plaintiff's due process claim arising from the loss of his work

---

[4] In his opposition, plaintiff states that he intended to bring a retaliation claim based on the alleged overcharging of the disciplinary offense. However, plaintiff did not state such a claim in the FAC.

14

1 and privilege group status on the ground that plaintiff has no liberty interest in such classification
2 status.

3 The Court agrees. A prisoner has no federal due process right to a particular classification.
4 Interests protected by the Due Process Clause may arise from two sources – the Due Process
5 Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976).
6 Changes in conditions so severe as to affect the sentence imposed in an unexpected manner
7 implicate the Due Process Clause itself, whether or not they are authorized by state law. See
8 Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes in conditions relating to classification and
9 reclassification do not implicate the Due Process Clause itself. See Hernandez v. Johnston, 833
10 F.2d 1316, 1318 (9th Cir. 1987) (citing Moody v. Dagget, 429 U.S. 78, 88 n.9 (1976)) (no
11 constitutional right to particular classification). Deprivations authorized by state law that are less
12 severe or more closely related to the expected terms of confinement may also amount to
13 deprivations of a procedurally protected liberty interest, provided that (1) state statutes or
14 regulations narrowly restrict the power of prison officials to impose the deprivation, i.e. give the
15 inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." See
16 Sandin, 515 U.S. at 477-87. Although California has created a regulatory scheme from which a
17 protected liberty interest in classification and custody designation might arise, the liberty in
18 question is not protected by the Due Process Clause because the deprivation of a correct
19 classification or custody designation cannot be characterized as one of "real substance," i.e., it
20 does not impose "atypical and significant hardship on the inmate in relation to the ordinary
21 incidents of prison life," Sandin, 515 U.S. at 484, or "inevitably affect the duration of [a]
22 sentence," id. at 487.

23 Accordingly, plaintiff's due process claim arising from the alleged loss of his work and
24 privilege group classification will be dismissed. Because the claim cannot be cured by
25 amendment, the dismissal is with prejudice.

26 **5. Fraudulent Confiscation Receipt**

27 Defendants seek to dismiss plaintiff's claim that Cate and Grounds provided deficient
28 oversight, which allowed Lopp, Mensing, and Clavijo to allegedly falsify the confiscation receipt

15

on the ground that plaintiff makes only vague and conclusory allegations.

In his opposition, plaintiff clarifies that he intended to allege a supplemental state law claim against Lopp, Mensing, and Clavijo. (Opp. at 24-25.) Specifically, plaintiff states that "Lopp prepared and backdated a fraudulent 'confiscation receipt'" and that "Lt. Mensing and Sgt. Clavijo offered into evidence as genuine – during [] administrative proceedings – the fraudulent 'confiscation receipt'" all "in violation of California Penal Code § 132." (Id.)[5]

Even if plaintiff intended to bring a supplemental state law claim under Cal. Penal Code § 132, such claim is not cognizable here because there is no private right of action for the violation of criminal statutes. Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006). Further, because there is no underlying constitutional deprivation committed by Lopp, Mensing, and Clavijo, plaintiff cannot state a claim against Cate and Grounds based on their alleged "deficient oversight" of these defendants. (FAC at 25.)

### 6. Supervisory liability

As noted above, in its order of service, the Court found plaintiff had stated claims for supervisory liability against defendants Cate and Grounds based on plaintiff's allegations that Cate and Grounds had allowed: (1) Lopp, Baumgardner, Ramos, Martinez, and Caravello to allegedly overcharge plaintiff for a disciplinary offense; and (2) Lopp, Baumgardner, and Ramos to allegedly confiscate and destroy plaintiff's property. Defendants seek to dismiss these supervisory liability claims.

As discussed above, the Court has found no underlying constitutional deprivation in connection with these claims. Accordingly, the supervisory liability claims against Cate and Grounds arising from the two aforementioned underlying claims will be dismissed.

Defendants also seek to dismiss the "Eighth Amendment claim against defendants Cate

---

[5] Cal. Penal Code § 132 provides as follows: "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of felony."

16

and Grounds for supervisory liability." (MTD at 15.) Plaintiff did not plead such a claim, nor did the Court recognize one in the order of service. Defendants Cate and Grounds are named on plaintiff's Eighth Amendment as direct defendants, not as defendants in a supervisory capacity. Accordingly, defendants' motion to dismiss the Eighth Amendment conditions of confinement claim against Cate and Grounds will be denied.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion to dismiss is hereby GRANTED IN PART and DENIED IN PART as follows:

   a. Defendants' motion to dismiss plaintiff's Eighth Amendment conditions of confinement claim against defendants Cate and Grounds is DENIED.

   b. Plaintiff's remaining claims are DISMISSED with prejudice

2. The Clerk is directed to terminate as defendants Martinez, Caravello, Mensing, Ramos, Lopp, Baumgardner, Truett, Mullen, and Clavijo on the court docket.

3. In order to expedite the resolution of this case, the Court orders as follows:

   a. No later than **ninety (90)** days from the date this order is filed, the remaining defendants, i.e., Cate and Grounds, shall file a motion for summary judgment on plaintiff's remaining claim, specifically his Eighth Amendment conditions of confinement claim, relating to the time plaintiff spend in Ad-Seg. A motion for summary judgment also must be accompanied by a Rand notice so that plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on plaintiff.

   b. Plaintiff's opposition to the summary judgment motion, if any, shall be filed with the Court and served upon defendants no later than **twenty-eight (28)** days from the date the

motion is filed.

        c.      Defendants **shall** file a reply brief no later than **fourteen (14)** days after the date the opposition is filed.

        d.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

This order terminates Docket No. 29.

**IT IS SO ORDERED**.

Dated: July 1, 2013

                                            JON S. TIGAR
                                            United States District Judge