UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARVIN R. GORDON,

    Plaintiff,

v.

MATTHEW CATE, et al.,

    Defendants.

Case No. 11-cv-03593-JST (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND DECLARATION**

Re: Dkt. Nos. 54, 61

    Plaintiff, an inmate at the California Correctional Training Facility ("CTF"), filed this pro se civil rights action under 42 U.S.C. § 1983. On March 16, 2012, Plaintiff filed a First Amended Complaint ("FAC"), which is the operative complaint in this action. In an Order Granting Defendants' Motion to Dismiss, the Court concluded that Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Randy Grounds, former Warden of CTF, and Matthew Cate, former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), in their individual capacities, was the only claim that survived the motion to dismiss. Now before the Court is Warden Grounds and Secretary Cate's motion for summary judgment on the Eighth Amendment claim. Plaintiff has filed an opposition and Defendants have replied. Defendants have also filed a motion to amend the declaration submitted by Warden Grounds. Plaintiff has not opposed this motion. For the reasons set forth below, the Court grants Defendants' motions.

## FACTUAL BACKGROUND

    The following facts are undisputed, unless noted.

    On October 8, 2010, Officers Lopp and Baumgardner conducted a search of Plaintiff's cell and found two contraband screwdrivers. FAC at ¶¶ 29, 30-34. Officer Baumgardner issued a

1   Rules Violation Report ("RVR") charging Plaintiff with possession of inmate manufactured
2   weapons. FAC at ¶ 33; Declaration of Kevin Voth ("Voth Dec.") at ¶ 4, Ex. C. As a result,
3   Plaintiff was placed in administrative segregation ("Ad Seg"), cell O-146. Voth Dec., Ex. D.
4       Plaintiff's segregation records show that, prior to his placement in Ad Seg, he received a
5   medical examination and he was given a "new arrival kit," containing hygiene products, paper,
6   envelopes and a pencil. Id. at ¶ 7, Ex. F. Plaintiff also received a denim jumpsuit, t-shirt, boxers,
7   towel, socks, shoes and two sheets. Id. at ¶ 8, Ex. G. Ex. A, Plaintiff's Deposition at 46. Plaintiff
8   was given a cotton blanket because he cannot use wool blankets due to psoriasis. Id., Ex. A at 46.
9       On October 13, 2010, Plaintiff was transferred to cell 313L in CTF's X Wing housing unit.
10  Id., Ex. G. On October 14, 2010, Plaintiff appeared before the Institutional Classification
11  Committee ("ICC") for an initial review of his placement in Ad Seg. Id., Ex. H. The hearing
12  records indicate that Plaintiff stated that he was in good health and did not complain about his cell
13  conditions. Id.
14      Plaintiff remained in cell 313L until October 20, 2010. Id., Ex. G. During the seven days
15  that Plaintiff was in this cell, he had periodic access to housing unit staff. Id. Staff provided
16  Plaintiff with three meals each day and disposed of his trash daily. Id. He showered twice and
17  exchanged his laundry once. Id.
18      Plaintiff states that his mattress was dirty and foul-smelling and stained from water, urine,
19  mildew or food. FAC at ¶ 51. The mattress was so flat that Plaintiff began experiencing back
20  pains after the first night. Id. Plaintiff requested a pillow for sleeping from Ad Seg staff, but he
21  never received one. FAC at ¶ 52. As a result, he experienced frequent neck pain. Id.
22  Furthermore, the window in Plaintiff's cell was missing a pane of glass so that, at night, his cell
23  was cold. FAC at ¶ 53. Plaintiff only had a thin jumpsuit, t-shirt and a cotton blanket, so he was
24  forced to place his body in a cocoon-like position throughout the night to keep warm. Id. Plaintiff
25  never told staff about his back or neck pain nor did he submit an emergency inmate grievance
26  about the conditions in his cell. Pl's Depo. at 48-50. Plaintiff never became ill from the
27  conditions in his cell. Id. at 49.
28

1 CTF temperature logs show that between October 13 and October 20, 2010, the
2 temperature inside X-Wing ranged between 59 to 76 degrees Fahrenheit.  Declaration of D.
3 Pherigo ("Pherigo Dec.") at ¶ 5, Ex. A.  The logs further show that the outside temperature ranged
4 from a low of 53 degrees to a high of 91 degrees.  Id., Ex. B.

5 On October 19, 2010, Plaintiff was transferred to cell 232L in the O-Wing housing unit,
6 where he remained until his release from Ad Seg on November 24, 2010.  Voth Dec., Ex. G.
7 Staff provided Plaintiff with three meals each day, disposed of his trash daily, and exchanged his
8 linens and clothing.  Id.; Pl's Depo. at 51.  Plaintiff had the opportunity to shower three times per
9 week, but sometimes refused to shower.  Voth Dec., Ex. G.  Defendants' evidence shows that
10 Plaintiff exercised twice while housed in cell 232L, but Plaintiff states that he never exercised.
11 The parties do not dispute that Plaintiff was provided with many opportunities to exercise, which
12 he refused on seventeen occasions.  Id.  Plaintiff states that he only had a jumpsuit to wear so that
13 "going out into the rain and freezing weather to exercise alone would have been simply asinine."
14 FAC at ¶ 50 n.3.  At his deposition, Plaintiff testified that it only rained three times while he was
15 in Ad Seg, but the ground was wet in the mornings from dew and the sky was constantly overcast.
16 Also, if he went out to the exercise yard and found that it was too cold, he could not come back in
17 before the time allotted to him.  Pl's Depo. at 52-53.

18 In O-Wing, Plaintiff had difficulty sleeping because other inmates made excessive noise by
19 playing loud music, singing, crying and yelling at each other.  FAC at ¶ 54-55, Pl's Depo. at 50.
20 Periodically staff attempted to control the noise by telling inmates to quiet down and by turning
21 off the power for thirty minutes, but this was not effective.  Pl's Depo. at 50-51.  Plaintiff did not
22 tell staff that he was having trouble sleeping and did not request medical attention for his sleeping
23 difficulty.  Id. at 51.

24 Plaintiff also states that the ventilation systems in his cells in O-Wing and X-Wing, which
25 consist of small vents over the toilets, were not working during his stay in the units.  FAC at ¶ 48.

26 At the time of the events in question, Defendant Grounds was the warden of CTF and
27 Defendant Cate was the secretary of CDCR.  Warden Grounds was responsible for the operational
28 plans and procedures of CTF and CTF associate wardens and subordinate facility staff were

3

1  responsible for implementing and ensuring daily compliance with policies and procedures.
2  Grounds Dec. at ¶ 3. Warden Grounds periodically met with facility managers regarding
3  institutional-wide issues, but he did not personally monitor or inspect housing conditions nor
4  oversee, order or approve facility maintenance and repairs. Id. at ¶ 4. Warden Grounds'
5  designated representative was responsible for reviewing second-level responses to institutional
6  inmate grievances. Id. at ¶ 3.
7      Warden Grounds states that he was not aware of the existence of any housing conditions in
8  Ad Seg that posed a threat to inmates' health and safety. Id. at ¶ 6. He never approved nor was
9  aware of the existence of any policy that subjected inmates in Ad Seg to unsanitary or unsafe
10 conditions. Id. Nor was he aware of the specific conditions of Plaintiff's confinement in Ad Seg
11 in October and November 2010. Id.
12     CDCR headquarters staff, including Secretary Cate, played no direct role in the operation
13 of CTF's Ad Seg units. Id. Specific issues regarding housing conditions, including maintenance,
14 repairs and inmate complaints, were handled locally by facility staff within the institution. Id.
15     Plaintiff claims that Warden Grounds and Secretary Cate were aware of the conditions he
16 experienced in Ad Seg. However, as discussed below, none of the evidence he submits establishes
17 this fact.

## STANDARD OF REVIEW

### I. Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an

4

1  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
2  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden
3  of identifying those portions of the record that demonstrate the absence of a genuine issue of
4  material fact.  Id.  The burden then shifts to the nonmoving party to "go beyond the pleadings and
5  by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'
6  designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (citing Fed. R.
7  Civ. P. 56(e) (amended 2010)).

8        For purposes of summary judgment, the court must view the evidence in the light most
9  favorable to the nonmoving party; if the evidence produced by the moving party conflicts with
10 evidence produced by the nonmoving party, the court must assume the truth of the evidence
11 submitted by the nonmoving party.  Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).
12 The court's function on a summary judgment motion is not to make credibility determinations or
13 weigh conflicting evidence with respect to a disputed material fact.  T.W. Elec. Serv., Inc., v.
14 Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

15       A verified complaint may be used as an opposing affidavit under Rule 56, provided it is
16 based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v.
17 McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as
18 opposing affidavit where plaintiff stated, under penalty of perjury, contents were true and correct,
19 and allegations were not based purely on information and belief but rather on personal
20 knowledge).  Here, Plaintiff's verified complaint is considered in opposition to the motion for
21 summary judgment.

22 **II.    Eighth Amendment Claim Based on Conditions of Confinement**

23       The Constitution does not mandate comfortable prisons, but neither does it permit
24 inhumane ones.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives
25 in prison and the conditions under which he is confined are subject to scrutiny under the Eighth
26 Amendment.  Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Eighth Amendment also
27 imposes duties on prison officials, who must provide all prisoners with the basic necessities of life
28 such as food, clothing, shelter, sanitation, medical care and personal safety.  Farmer, 511 U.S. at

832; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is objectively, sufficiently serious, Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, id. (citing Wilson, 501 U.S. at 297).

## DISCUSSION

I.   **Objective Component of Eighth Amendment Claim—Sufficiently Serious Condition**

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (internal quotations omitted); Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (only extreme deprivations that deny the minimal civilized measure of life's necessities are sufficiently serious to form the basis of an Eighth Amendment violation). In determining whether conditions of confinement are objectively serious under the Eighth Amendment, the court must analyze each condition separately. Hoptowit v. Ray, 682 F.2d 1237, 1246-47 (9th Cir. 1982), abrogated on other grounds by Sandin v. O'Connor, 515 U.S. 472 (1995). Unrelated conditions of confinement cannot in combination amount to a constitutional violation unless they have a mutually reinforcing effect that produces a deprivation of a single, identifiable human need. Wilson v. Seiter, 501 U.S. 294, 304 (1991). Disciplinary needs may warrant the denial of less critical amenities for reasonable periods of time and the court must give reasonable leeway to prison officials when determining the existence of such disciplinary needs. Hoptowit, 682 F.2d at 1259.

A.   **Cell 313L—Lack of Adequate Mattress and Pillow**

The undisputed facts show that, for the seven days Plaintiff was housed in cell 313L, his mattress was dirty, stained and smelled bad. FAC ¶ 51. Also, the mattress was so thin, it caused

1    Plaintiff to have back pain and the lack of a pillow caused him neck pain.  FAC ¶ 52.  Staff gave

2    Plaintiff two clean sheets for his mattress and Plaintiff did not inform staff about his back and

3    neck pain.  Pl.'s Depo. at 46, 49-50.

4          Many courts have concluded that temporary deprivations of bedding are not sufficiently

5    serious to support an Eighth Amendment claim.  See Chappell v. Mandeville, 706 F.3d 1052,

6    1060-61 (9th Cir. 2013) (collecting cases); Centeno v. Wilson, 2011 WL 836747 (E.D. Cal. Mar.

7    4, 2011) (sleeping on cold floor without mattress or blanket for seven days did not violate Eighth

8    Amendment), aff'd by Centeno v. Wilson, 479 Fed. App'x 101 (9th Cir. 2012) (unpublished).

9          Also, temporary deprivations of sanitation that last a short time and do not pose a threat to

10   the inmate's health or safety are not sufficiently serious to support an Eighth Amendment claim.

11   Anderson v. Cnty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995) (temporary placement in safety

12   cell that was dirty and smelled bad did not constitute Eighth Amendment violation); Smith v.

13   Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation where pretrial detainee

14   subjected to overflowed toilet for four days).

15         Plaintiff cites cases for the general proposition that prison officials must ensure reasonably

16   clean and sanitary bedding.  See Toussaint v. McCarthy, 597 F. sup. 1388, 1411 (N.D. Cal. 1984),

17   aff'd in part and vacated in part on other grounds, 722 F.2d 1490 (9th Cir. 1989); Hutto v. Finney,

18   437 U.S. 678 (1978).  Defendants do no dispute that prison officials are required to provide clean

19   and sanitary bedding.  The issue in dispute is whether the particular circumstances Plaintiff

20   encountered rises to the level of a constitutional violation.

21         Under the above-cited authority, that Plaintiff had to live with a thin, dirty mattress and no

22   pillow for seven days is not sufficiently serious to rise to the level of an Eighth Amendment

23   violation.

24         **B.**      **Cell 313L—Exposure to Cold and Rain**

25         The undisputed facts show that, when Plaintiff was housed in cell 313L for seven days, a

26   pane was missing from his window and the ventilation system did not function.  During this time,

27   it rained three times at night and a "little bit of water" came into his cell.  Plaintiff had only a thin

28   jumpsuit to wear and a cotton blanket and he slept in a cocoon-like position throughout the night

for warmth. FAC at ¶ 53. Plaintiff did not inform staff that he was uncomfortable with the temperature, he did not request warmer clothes or another blanket, and he did not submit an emergency grievance regarding the window or ventilation system. Prison records show that, during this time period, the nighttime temperatures inside X-Wing were generally in the 60s and 70s. Records show that, during this time, outside nighttime temperatures were in the mid- to high-50s. The coldest recorded temperature was 53 degrees, which lasted for one hour on October 16, 2010. Although he was uncomfortable, Plaintiff never became ill from exposure to cold or rain. Pl.'s Depo. at 49.

In Shrader v. White, 761 F.2d 975, 983 (4th Cir. 1985), the court held that a leaky roof causing water damage and puddles in a prison housing unit was not an Eighth Amendment violation. In Wilson v. Schomig, 863 F. Supp. 789, 794-95 (N.D. Ill. 1994), the court held that a prisoner's stay for eight months in a cell with a ceiling that leaked in rainstorms did not constitute an Eighth Amendment violation.

Plaintiff argues that, under Wilson v. Seiter, 501 U.S. at 304, the combination of the missing window-pain in conjunction with the faulty ventilation providing no heat and his thin clothes and blanket had a mutually reinforcing effect on his need for warmth and thus constituted an Eighth Amendment violation. If Plaintiff was exposed to these conditions for months or even weeks, the conditions, in combination, might rise to the level of a constitutional violation. However, Plaintiff was exposed to these particular conditions for only seven days. Given this short amount of time, they do not rise to the level of an Eighth Amendment violation.

### C.     Cell 232L—Excessive Noise

As a result of the excessive noise Plaintiff experienced for the month he was housed in cell 232L, he was sleep deprived. FAC at ¶ 55. Defendants cite cases that hold that conditions causing an inmate's inability to sleep did not violate the Eighth Amendment. However, these cases addressed sleep deprivation for only one night. See Mendoza v. Blodgett, 1990 WL 263527, *2, 5 (E.D. Wash. Dec. 21, 1990) (to search for contraband, inmate was woken up every four hours); Williams v. Ward, 567 F. Supp. 10, 13, 15 (E.D.N.Y. 1982) (continuous illumination causing inability to sleep for one night). However, the Ninth Circuit has held that public

8

conceptions of decency inherent in the Eighth Amendment require that inmates be housed in an environment that, if not quiet, is at least reasonably free of excess noise. Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (quoting Toussaint v. McCarthy, 597 F. Supp. 1388, 1397, 1410 (N.D. Cal. 1984), aff'd in part, rev'd in part on other grounds, 801 F.2d 1080, 1110 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987)). For example, a plaintiff's allegations that, for six months in a maximum security cell, "at all times of day and night inmates were 'screaming, wailing, crying, singing and yelling,' often in groups, and that there was a 'constant, loud banging'" were sufficient to defeat the defendants' motion for summary judgment. Id. In Toussaint, the court noted, "The unceasing racket exerts a profound impact on lockup inmates, some of whom consider it to be the single worst aspect of their confinement. Many shove paper, erasers, and other foreign objects into their ears in an attempt to shut it out. Noise contributes to the great difficulty many experience in sleeping. Doctors at both prisons testified that the relentless roar adversely affects the mental health of segregated inmates. The noise dulls the thinking of the prisoners and even damages the hearing of some." 597 F. Supp. at 1397-98.

Plaintiff was housed in cell 232L from October 20 to November 24, 2010. During this period, the undisputed facts show that Plaintiff was constantly subjected to the "constant screaming, wailing, crying, singing and yelling" of the other inmates. FAC at ¶ 55. As a result, Plaintiff was sleep-deprived for significant periods of time and he now suffers from depression and frequent nightmares. Id. However, Plaintiff did not tell staff that he was having trouble sleeping, request medical attention for his sleep deprivation, or ask for ear plugs. Pl.'s Depo. at 51.

Defendants argue that the temporary nature of the noise Plaintiff experienced distinguishes it from the facts in Keenan where the inmate was exposed to constant noise for six months. They also argue that Plaintiff did not tell staff that the noise was preventing him from sleeping shows that it did not have a significant impact on him.

The facts here fall between Defendants' cases, where sleep deprivation for one night did not constitute an Eighth Amendment violation, and Keenan, where constant noise and sleep

deprivation for six months was sufficient to satisfy the objective prong of an Eighth Amendment violation. This Court finds that there is a triable issue of material fact regarding whether the plaintiff's being subjected to "the constant screaming, wailing, crying, singing and yelling" of other inmates was an objectively serious deprivation,[1] given Plaintiff's claims that the noise prevented him from sleeping for significant periods of time and caused him later to suffer from depression and frequent nightmares.[2]

### D.   Cell 232L—Lack of Outdoor Exercise

The undisputed facts show that, while Plaintiff was housed in cell 232L, he was given opportunities to exercise on many occasions, but declined when the weather was inclement because he only had thin clothing. Plaintiff claims this amounts to the constructive denial of outdoor exercise.

Exercise is one of the basic human necessities protected by the Eighth Amendment. LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993); Toussaint v. Rushen, 553 F. Supp. 1365, 1380 (N.D. Cal. 1983), aff'd in part and vacated in part, 722 F.2d 1490 (9th Cir. 1984). Some form of regular exercise, including outdoor exercise, "is extremely important to the psychological and physical well-being" of prisoners. Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Prison officials therefore may not deprive prisoners of regular exercise. Toussaint, 597 F. Supp. at 1393.

Prisoners "confined to continuous and long-term segregation" may not be deprived of outdoor exercise. Keenan, 83 F.3d at 1089-90; see, e.g., Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010) (fourteen-month deprivation of outdoor exercise sufficiently serious to satisfy objective component of Eighth Amendment analysis); Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc) (denial of outdoor exercise for 6-1/2 weeks meets objective prong of Eighth Amendment claim); Keenan, 83 F.3d at 1089-90 (denial of outdoor exercise for six months

---

[1] Nonetheless, as discussed below, the Court will grant summary judgment on this claim, because Plaintiff has failed to show that Defendants knew of and disregarded this risk to Plaintiff's health.
[2] The fact that Plaintiff made no effort to ameliorate the impact of the noise by asking for earplugs or a sleeping aid does affect Defendants' knowledge of the noise, but is not adequate by itself to show that the noise was not severe or bothersome.

1   while in segregation sufficient to proceed to trial); <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087-88 (9th Cir.

2   1994) (forty-five minutes of outdoor exercise per week for inmate indefinitely housed in secured

3   housing unit met objective requirement of Eighth Amendment analysis).

4         However, prison officials are not obligated to provide outdoor exercise where inclement

5   weather or unusual circumstances make it impossible.  <u>Spain</u>, 600 F.2d at 199.  Also, a temporary

6   twenty-one day denial of outdoor exercise, with no medical effects is not a substantial deprivation

7   under the Eighth Amendment.  <u>May v. Baldwin</u>, 109 F.3d 557, 565-66 (9th Cir. 1997).

8         This situation is distinguishable from most cases because Plaintiff had many opportunities

9   to exercise outdoors but declined because of inclement weather and light clothing.  No evidence

10  shows that Plaintiff asked for warmer clothes or rain gear.  These facts do not sustain Plaintiff's

11  argument that he was "constructively denied" outdoor exercise.  Also, that Plaintiff was in cell

12  232L for approximately one month means that the deprivation that he experienced, if any, was

13  temporary.  Therefore, the undisputed facts underlying the outdoor exercise claim are insufficient

14  to meet the objective component of an Eighth Amendment violation.

15  **II.     Subjective Component of Eighth Amendment Claim—Deliberate Indifference**

16        A prison official cannot be held liable under the Eighth Amendment for denying an inmate

17  humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the

18  official knows of and disregards an excessive risk to inmate health or safety.  <u>Farmer</u>, 511 U.S. at

19  837.  The official must both be aware of facts from which the inference could be drawn that a

20  substantial risk of serious harm exists, and he must also draw the inference.  <u>Id.</u>  An Eighth

21  Amendment claimant need not show, however, that a prison official acted or failed to act believing

22  that harm actually would befall an inmate; it is enough that the official acted or failed to act

23  despite his knowledge of a substantial risk of serious harm.  <u>Id.</u> at 842.  This is a question of fact.

24  <u>Id</u>.  Deliberate indifference describes a state of mind more blameworthy than negligence.  <u>Id.</u> at

25  835 (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  Neither negligence nor gross negligence

26  will constitute deliberate indifference.  <u>Id.</u> at 835-36 & n.4; <u>see also</u> <u>Estelle</u>, 429 U.S. at 106

27  (establishing that deliberate indifference requires more than negligence).  Deliberate indifference

28  is not shown by merely stating that a defendant should have known of a risk, but requires an actual

perception of a risk that does not exist merely because a reasonable person should have perceived a risk.  Farmer, 511 U.S. at 837.

Even assuming that the first, objective, component was met by all of the conditions Plaintiff challenges, Plaintiff has nevertheless failed to show that Defendants were aware that Plaintiff's housing conditions in Ad Seg posed a substantial risk to his health or safety, let alone that they deliberately disregarded such a risk.

Defendants have submitted evidence showing the following: (1) associate wardens and subordinate staff were responsible for the day-to-day facility operations at CTF, including maintenance and repairs, Grounds Dec. at ¶¶ 3-4; (2) Warden Grounds' duties as warden did not bring him into contact with the specific details of inmates' housing conditions, id. at ¶ 6; (3) Warden Grounds did not approve or have knowledge of a policy that allowed for the existence of unsanitary or unsafe housing conditions in Ad Seg., id. (4) Warden Grounds' designated representative was responsible for reviewing second-level inmate grievances, id. at ¶ 3; and (5) information regarding housing conditions of prison facilities was not reported to CDCR headquarters, and headquarters staff, including the CDCR Secretary, did not participate in the operation of the Ad Seg units of any prison, id. at ¶ 7.

Plaintiff argues that allegations in his verified complaint show that Defendants were aware of the conditions he experienced while he was in Ad Seg.  In his FAC, Plaintiff states on information and belief that Defendants knew of unconstitutional conditions by way of inmate grievances and lawsuits.  FAC at ¶¶ 43, 89.  Plaintiff also states – again, on information and belief – that "the unconstitutional conditions [in Ad Seg] have been longstanding, pervasive and apparent to any knowledgeable and competent observer.  Even had [Warden Grounds] not known, this ignorance was deliberate and by design."  FAC at ¶ 56.  Plaintiff's statements on information and belief are insufficient to raise a triable issue of fact regarding Defendants' awareness of the challenged conditions of confinement.  See Taylor v. List, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989) (To raise an issue of material fact, a statement must be made on personal knowledge, not on information and belief).

In his FAC, Plaintiff also states that Warden Grounds "implemented a series of policy directives showing the magnitude of his indifference . . . by operating segregation units in a manner so shocking that it insult[s] society's sense of evolving decency." FAC at ¶ 90. Regarding Secretary Cate, Plaintiff states that he either knew of Grounds' policies, customs and practices relating to "tortious segregation procedures" or he was deliberately indifferent by design." FAC at ¶ 91. These are conclusory statements, unsupported by factual data, which cannot raise a triable issue of material fact on summary judgment. See Taylor, 880 F.2d at 1045.

Plaintiff argues that, based upon the holding in Toussaint v. Rushen, Case No. C 73-1422 SAW; 553 F. Supp. 1365 (N.D. Cal. 1983), Defendants were aware of the inadequate conditions in the Ad Seg cells. Toussaint addressed a class action filed in 1973 regarding various problems with Ad Seg units in all the prisons in California, including CTF. Id. at 1367-68. In Toussaint, the court concluded that there were many unconstitutional conditions in California prisons' Ad Seg units. Id. at 1371-73. However, Toussaint was filed in 1973 and all injunctive relief was terminated in 1997. See Toussaint v, Enomoto, Case No. C 73-1422 SAW (N. D. Cal.), docket no. 3368, Order vacating injunctions and dismissing case with prejudice. Plaintiff submits no evidence showing that Defendants Grounds and Cate were aware of Toussaint or even that they were employees of CDCR while it was being litigated. Furthermore, because the court terminated injunctive relief in 1997, it can be assumed that, by then, the unconstitutional conditions of confinement had been resolved to the Court's satisfaction. Accordingly, Toussaint, which was closed over ten years before Plaintiff filed this action, is not evidence that Defendants Grounds and Cate knew of the unconstitutional conditions in Plaintiff's Ad Seg cells.

Citing Starr v. Baca, 633 F.3d 1202, 1207 (9th Cir. 2011),[3] and Hydrick v. Hunter, 669 F.3d 937 (9th Cir. 2012), Plaintiff argues that he has pleaded sufficient facts to plausibly suggest Defendants' 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinate. Opp'n at 13. These cases are distinguishable.

---

[3] This case was withdrawn and superseded on denial of rehearing en banc by Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). Because this later case does not change the holding or reasoning of the case cited by Plaintiff; the Court will use Petitioner's case and citations.

13

In Starr, the court reversed the district court's decision granting a motion to dismiss a supervisory liability claim for deliberate indifference against the sheriff of Los Angeles County. Starr, 633 F.3d at 1204. The court found the following allegations in the complaint sufficient to show that the sheriff was deliberately indifferent: (1) pursuant to an investigation by the Department of Justice (DOJ) into conditions at Los Angeles County jails in 1997, the sheriff, then a supervisor, was given written notice in a DOJ findings letter of serious pattern and practices of constitutional violations; (2) the sheriff received weekly reports from his subordinates responsible for reporting deaths and injuries in the jails and received ongoing reports of his Special Counsel and Office of Independent Review; (3) in 1999, under threat of a lawsuit by the DOJ, the sheriff submitted to a Memorandum of Understanding ("MOU") with the DOJ which required him to address and correct the continuous constitutional violations; (4) in 2006, the DOJ issued a report finding noncompliance with many of its recommendations regarding the abuse of inmates; and (5) specific inmates were severely beaten and killed. Id. at 1209-10.

Starr does not assist Plaintiff. First, Starr addressed a motion to dismiss, which merely requires that the complaint include allegations sufficient to state a claim. Id. at 1204. This Court also found that Plaintiff's allegations were sufficient to withstand Defendants' motion to dismiss. However, the case is now at the summary judgment stage where Plaintiff must offer admissible evidence to raise a disputed issue for trial. As discussed above, the FAC allegations, which consist of statements made on information and belief or are conclusory, are insufficient to raise a disputed issue for trial.

Second, unlike Plaintiff's allegations, the allegations in Starr were specific. For instance, the allegation that the DOJ issued a report finding that the sheriff was noncompliant with the MOU in which he promised to rectify many of the issues in the plaintiff's claims, was direct evidence that he was fully aware of the unconstitutional conditions and failed to rectify them. Plaintiff attempts to duplicate Starr's allegation by relying on Toussaint. However, as discussed above, Toussaint is an old case which was closed more than ten years prior to the events of which Plaintiff complains. Therefore, Toussaint is not evidence that Defendants failed to prevent the conditions in Plaintiff's cells or even had knowledge of them.

14

Hydrick v. Hunter also does not assist Plaintiff. In Hydrick, the court found that the plaintiff's complaint contained only conclusory allegations and generalities, without specifying the wrongdoing by each defendant. 669 F.3d at 942. For instance, the court noted that the complaint alleged that the defendants' policies, practices and customs subjected the plaintiff to unreasonable searches, but did not allege a specific policy implemented by the defendants or a specific event instigated by the defendants that led to the allegedly unconstitutional searches. Id. The court concluded that the defendants were entitled to qualified immunity because the complaint failed to allege sufficient facts to establish any defendant's own participation in the alleged constitutional violations or knowledge of and acquiescence in the unconstitutional conduct of the defendants' subordinates. Id.

Plaintiff also cites Lira v. Herrero, case number C 00-0905 SI (PR) (N.D. Cal), docket no. 456, aff'd No. 09-17446 (9th Cir. 2011), in which this Court found that Secretary Cate had failed to provide constitutionally adequate notices and hearings to prisoners prior to placing them in segregation facilities. However, Lira is not relevant to the claim before the Court, which is whether Cate and Grounds were deliberately indifferent to the unconstitutional conditions in Plaintiff's Ad Seg cells.

Plaintiff also argues that his own grievance regarding the conditions in his cells establish Defendants' knowledge and failure to act. Opp'n at 13. However, Plaintiff did not submit his grievances until months after his release from Ad Seg and it is undisputed that Grounds did not personally review inmate grievances. Grounds Dec. at ¶ 3. Furthermore, under California Code of Regulations, title 15, § 3084.7(d)(3), the CDCR Secretary does not personally review third-level grievances; they are reviewed by a designated representative under the supervision of the Appeals Chief. Additionally, Plaintiff's grievance was screened out at the first level of review and never reached the Director's level of review. Declaration of J. Truett in support of Defendants' motion to dismiss, docket no. 34, at ¶¶ 13-21. Thus, Plaintiff's grievances are not evidence that Defendants knowingly failed to prevent the alleged harm.

In sum, Plaintiff has failed to raise a triable issue of material fact as to whether Defendants Grounds and Cate acted with deliberate indifference under the subjective prong of Farmer. See

1  511 U.S. at 834.  Accordingly, Defendants are entitled to summary judgment as a matter of law on

2  Plaintiff's Eighth Amendment claim based on conditions of confinement.

3  **III.    Qualified Immunity**

4  Defendants argue, in the alternative, that summary judgment is warranted because they are
5  entitled to qualified immunity from Plaintiff's Eighth Amendment claim.  The defense of qualified
6  immunity protects "government officials . . . from liability for civil damages insofar as their
7  conduct does not violate clearly established statutory or constitutional rights of which a reasonable
8  person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold
9  question in qualified immunity analysis is:  "Taken in the light most favorable to the party
10 asserting the injury, do the facts alleged show the officer's conduct violated a constitutional
11 right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court considering a claim of qualified
12 immunity must determine whether the plaintiff has alleged the deprivation of an actual
13 constitutional right and whether such right was "clearly established."  Pearson v. Callahan, 555
14 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a
15 deprivation first and then whether such right was clearly established, as required by Saucier and
16 holding that court may exercise its discretion in deciding which prong to address first, in light of
17 the particular circumstances of each case).  Where there is no clearly established law that certain
18 conduct constitutes a constitutional violation, a defendant cannot be on notice that such conduct is
19 unlawful.  Rodis v. County of San Francisco, 558 F.3d 964, 970-71 (9th Cir. 2009).  The relevant,
20 dispositive inquiry in determining whether a right is clearly established is whether it would be
21 clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Saucier,
22 533 U.S. at 202.

23 Viewing the evidence in the light most favorable to Plaintiff, with one exception, the Court
24 has determined above that Defendants' actions did not amount to an Eighth Amendment violation,
25 as Plaintiff failed to raise a triable issue of fact as to (1) whether Defendants acted with deliberate
26 indifference to Plaintiff's health and safety and (2) whether the challenged conditions were
27 sufficiently serious to meet the objective component of an Eighth Amendment violation.

28

16

However, even if this Court had found that Plaintiff had presented evidence of a triable issue of material fact whether he had suffered a constitutional violation, it concludes that a reasonable officer could not have believed that Defendants' actions—(1) for the week that Plaintiff was housed in cell 313L, failing to provide him with a clean mattress that was not flat, with a pillow, and with a window without a pane missing; and (2) for the month that Plaintiff was housed in cell 232L, to provide him different access to outdoor exercise and to reduce the noise— were unlawful in light of clearly established law and the information that Defendants possessed at the time Plaintiff was housed in Ad Seg. See Saucier, 533 U.S. at 205. Notably, the undisputed evidence shows that Defendants were not aware of the conditions Plaintiff experienced while he was in Ad Seg and, thus, they were not deliberately indifferent in failing to provide Plaintiff with the missing items or to correct the lack of exercise or noise Plaintiff experienced.

Accordingly, Defendants are also entitled to summary judgment based on qualified immunity.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Defendants' motion for summary judgment is granted.

2. Defendants' motion to amend Defendant Grounds' declaration is granted.

3. The Clerk shall enter a separate judgment in favor of Defendants and close the case.

4. This Order terminates docket numbers 54 and 61.

**IT IS SO ORDERED**.

Dated: February 27, 2014

_____
JON S. TIGAR
United States District Judge